# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WASHINGTON PUBLIC EMPLOYEES ASSOCIATION, UFCW LOCAL 365, a labor organization, and PROFESSIONAL & TECHNICAL EMPLOYEES LOCAL 17, a labor organization, | No. 49224-5-II |
| Petitioners, | PUBLISHED OPINION |
| v. | |
| WASHINGTON STATE CENTER FOR CHILDHOOD DEAFNESS & HEARING LOSS, and EVERGREEN FREEDOM FOUNDATION d/b/a FREEDOM FOUNDATION, et al. | |
| Respondents. | |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 76, a labor organization, and UNITED ASSOCIATION, LOCAL 32, a labor organization, | No. 49230-0-II |
| Petitioners,, | |
| v. | |
| STATE OF WASHINGTON, WASHINGTON STATE DEPARTMENT OF LABOR & INDUSTRIES, and EVERGREEN FREEDOM FOUNDATION d/b/a FREEDOM FOUNDATION, | |
| Respondents. | |

No. 49224-5-II

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 117, a labor organization, | No. 49234-2-II |
| Petitioner, | |
| v. | |
| STATE OF WASHINGTON; CHRISTOPHER LIU, in his capacity as DIRECTOR, DEPARTMENT OF ENTERPRISE SERVICES; DICK MORGAN, in his capacity as SECRETARY, DEPARTMENT OF CORRECTIONS; and EVERGREEN FREEDOM FOUNDATION d/b/a FREEDOM FOUNDATION, | |
| Respondents. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE 1199NW, a labor organization, | No. 49235-1-II |
| Petitioner, | |
| v. | |
| STATE OF WASHINGTON; DEPARTMENT OF SOCIAL AND HEALTH SERVICES, an agency of the State of Washington; DEPARTMENT OF HEALTH, an agency of the State of Washington; and EVERGREEN FREEDOM FOUNDATION d/b/a FREEDOM FOUNDATION, an organization, | |
| Respondents. | |

2

No. 49224-5-II

| | |
|---|---|
| WASHINGTON FEDERATION OF STATE EMPLOYEES, | No. 49248-2-II |
| Petitioner, | |
| v. | |
| STATE OF WASHINGTON; et al; and THE EVERGREEN FREEDOM FOUNDATION d/b/a FREEDOM FOUNDATION, | |
| Respondents. | |

SUTTON, J. — We are asked to determine whether the right to privacy guaranteed in Washington Constitution article I, section 7 protects state employees' full names associated with their corresponding birthdates from public disclosure. Several unions representing state employees[1] appeal the superior court's order denying their motions for a permanent injunction preventing the state agencies from disclosing information about their employees in response to a public records request by the Freedom Foundation.

We hold that article I, section 7 protects from public disclosure state employees' full names associated with their corresponding birthdates. Based on our holding, the trial court erred by denying the unions' motions for a permanent injunction preventing the release of the state employees' names associated with their corresponding birthdates.[2]

_____

[1] The unions representing those state employees are: Teamsters Local Union No. 117; Washington Public Employees Association, UFCW Local 365; Professional & Technical Employees Local 17; Washington Federation of State Employees; International Brotherhood of Electrical Workers, Local 76; United Association, Local 32; and Service Employees International Union Healthcare 1199NW (collectively referred to as the "unions").

[2] The unions also argue seven other grounds for preventing the disclosure of employees' names and corresponding birthdates: (1) RCW 42.56.230(3)—invasion of privacy under the Public Records Act (PRA); (2) RCW 42.56.070(8)—commercial purposes exemption under the PRA; (3)

3

No. 49224-5-II

FACTS

The Freedom Foundation (Foundation) is a non-profit political organization. One aspect of the Foundation's campaign is its worker education project to inform eligible state employees that they have a constitutional right to opt-out of paying union dues. In 2016, to further its project, the Foundation sent Public Records Act (PRA), ch. 42.56 RCW, requests to various state agencies[3] requesting disclosure of union represented employees' full names, birthdates, and work email addresses.

The agencies reviewed the Foundation's PRA requests, determined that all the requested records were disclosable and indicated that, absent a court order, they intended to release the requested records including the employees' full names associated with their corresponding birthdates and the employees' work email addresses.

The unions filed motions for temporary and permanent injunctions to prevent the disclosure of the requested records. The superior court granted the motions for a temporary injunction to prevent the agencies from disclosing most of the requested records. After a hearing on the motions for a permanent injunction, the superior court concluded that no exemptions under the PRA applied to the requested records and it denied the motions for a permanent injunction.

---

RCW 42.56.230(7)—personal information proving age under the PRA; (4) RCW 42.56.250—PRA exception for criminal justice agencies; (5) article I, section 5 of the Washington Constitution—freedom of association; (6) unfair labor practices; and (7) misuse of state resources. Because we reverse the trial court's order based on article I, section 7, we do not address the unions' remaining arguments.

[3] For clarity, we refer to the individual agencies collectively as "agencies" unless an agency is specifically identified.

4

No. 49224-5-II

The unions appealed and filed an emergency motion for a stay with this court. A commissioner of this court granted the motion for a stay only as to the state employees' full names associated with their corresponding birthdates.

ANALYSIS

I. PRA INJUNCTIONS—LEGAL PRINCIPLES

We review challenges to an agency action under the PRA de novo. RCW 42.56.550(3); *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 428, 327 P.3d 600 (2013). "Where the record consists only of affidavits, memoranda of law, and other documentary evidence, an appellate court stands in the same position as the trial court in reviewing agency action challenged under the PRA." *Robbins, Geller, Rudman & Dowd, LLP v. Office of the Attorney Gen.*, 179 Wn. App. 711, 719-20, 328 P.3d 905 (2014).

The PRA mandates the broad disclosure of public records. *Resident Action Council*, 177 Wn.2d at 431. RCW 42.56.030 expressly requires that the PRA be "liberally construed and its exemptions narrowly construed . . . to assure that the public interest will be fully protected." When evaluating a PRA claim, we must "take into account the policy of [the PRA] that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3).

Under RCW 42.56.070(1), a government agency must disclose public records upon request unless a specific exemption in the PRA applies or some other statute applies that exempts or prohibits disclosure of specific information or records. *Ameriquest Mortg. Co. v. Office of the Attorney Gen.*, 177 Wn.2d 467, 485-86, 300 P.3d 799 (2013). RCW 42.56.540 allows one to seek an injunction to prevent the disclosure of public records under the PRA. RCW 42.56.540 states:

5

> The examination of any specific public record may be enjoined if, upon motion and affidavit by an agency or its representative or a person who is named in the record or to whom the record specifically pertains, the superior court . . . finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital government functions.

Thus, for a person named in a record to obtain an injunction preventing disclosure of public records under the PRA, the person must show that (1) the record in question specifically pertains to that person, (2) an exemption applies, (3) the disclosure would not be in the public interest, and (4) disclosure would substantially and irreparably harm that party or a vital government function. *Ameriquest*, 177 Wn.2d at 487.

In addition to the requirements in RCW 42.56.540, a party generally must establish three common law requirements to obtain permanent injunctive relief: (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the act complained of will result in actual and substantial injury. *Huff v. Wyman*, 184 Wn.2d 643, 651, 361 P.3d 727 (2015). As we recently recognized:

> It is unclear how these [common law] requirements relate to the injunction requirements of RCW 42.56.540, and no case has applied these general requirements in a RCW 42.56.540 case. However, the first two requirements for a permanent injunction relate to the existence of an exemption and the third requirement is consistent with a similar requirement in RCW 42.56.540.

*Service Employees International Union (SEIU) Healthcare 775NW v. Dep't of Soc. & Health Servs.*, 193 Wn. App. 377, 393, 377 P.3d 214, *review denied*, 186 Wn.2d 1016 (2016). We review orders on injunctions under the PRA de novo. *Robbins*, 179 Wn. App. at 720.

6

## II. CONSTITUTIONAL EXEMPTION

The state constitution may exempt certain records from production because it supersedes contrary statutory laws. *White v. Clark County*, 188 Wn. App. 622, 631, 354 P.3d 38 (2015), *review denied*, 185 Wn.2d 1009 (2016). Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. 1 § 7. We recently addressed the application of article I, section 7 to the PRA in *SEIU Local 925 v. Freedom Foundation*. We explained,

> Interpreting and applying article I, section 7 requires a two-part analysis. The first step requires determining whether the State unreasonably intruded into a person's private affairs. If a person's private affairs are not disturbed, our analysis ends and there is no article I, section 7 violation. If, however, a private affair has been disturbed, the second step is to determine whether authority of law, such as a valid warrant, justifies the intrusion.

197 Wn. App. 203, 222, 389 P.3d 641 (2016) (internal citations and quotation marks omitted). The person challenging disclosure bears the burden of demonstrating the disturbance to his or her private affairs. *SEIU 925*, 197 Wn. App. at 223.

Private affairs are determined by considering either (1) the historical treatment of the interest asserted, or (2) whether the expectation of privacy is one that a citizen of this State is entitled to hold. *SEIU 925*, 197 Wn. App. at 222. When we analyze whether the expectation of privacy is one that a citizen of this state is entitled to hold, we review "(1) the nature and extent of the information that may be obtained as a result of the governmental conduct and (2) the extent that the information has been voluntarily exposed to the public." *SEIU 925*, 197 Wn. App. at 222. We also stated,

Private affairs are those that reveal intimate or discrete details of a person's life. What a person voluntarily exposes to the general public is not considered part of a person's private affairs.

*SEIU* 925, 197 Wn. App. at 222-23 (internal citations omitted). A non-exclusive list of intimate or discrete details includes: (1) one's whereabouts or co-guests at a motel, (2) patient names and diagnoses in mental health facilities, (3) trade secrets and related commercial information, (4) personal financial data, and (5) information regarding personal sexual matters. *SEIU 925*, 197 Wn. App. at 227.

Here, the unions do not argue that there is any historical protection for state employees' full names associated with their corresponding birthdates. However, a constitutional challenge allows us to consider "the nature and extent of the information that may be obtained as a result of the governmental conduct." *SEIU 925*, 197 Wn. App. at 222. The unions argue that by publically disclosing the requested information, a person could discover personal financial information, commit identity theft, or find confidential information such as the identified state employees' personal addresses and personal telephone numbers. Therefore, they argue that government disclosure exposes state employees to the risk of their private affairs and intimate details being exposed to the public.

We recognize that people do expose their names and corresponding birthdates to some extent. However, these disclosures are typically at the person's discretion and control. Public disclosure of state employees' full names associated with their corresponding birthdates reveals personal and discrete details of the employees' lives. Such disclosure to the public would not be voluntary or within the employee's control. Once disclosed to the public domain, these employees would potentially be subject to an *ongoing* risk of identity theft and other harms from the disclosure

of this personal information, such as their personal addresses and personal telephone numbers. A citizen of this state would reasonably expect that personal information, such as the public disclosure of his or her full name associated with his or her corresponding birthdate, that would potentially subject them to identity theft and other harms, would remain private. Therefore, we hold that, under article 1, section 7, a state employee is entitled to an expectation of privacy in his or her full name associated with his or her corresponding birthdate.

The Foundation argues that our Supreme Court's opinion in *Nissen v. Pierce County*, 183 Wn.2d 863, 357 P.3d 45 (2015), categorically precludes the unions from making any claim that information contained in public records is constitutionally protected. The Foundation relies on a single sentence in *Nissen* in which the court stated, "Because an individual has no constitutional privacy interest in a *public* record, Lindquist's challenge is necessarily grounded in the constitutional privacy interest he has in personal information comingled with those public records." *Nissen*, 183 Wn.2d at 883 (foot note omitted). But we do not read *Nissen* to impose a *categorical* prohibition against claiming that information contained within public records may be constitutionally protected.

The sentence that the Foundation relies on is dicta. The issue *Nissen* addressed in its analysis was the extent to which private devices could be searched for public records. *Nissen* offers no comment on the extent to which article I, section 7 creates an expectation of privacy to information contained within public records. Moreover, the court's statement in *Nissen* was made within the context of rejecting the county's claim that article I, section 7 categorically prohibited searching a government employee's private devices for public records. We read the statement on which the Foundation relies as a statement that there is no *categorical* constitutional protection

related to a public records request; consequently, there can be no *categorical* prohibition to claiming an expectation of privacy in information contained within public records. Because we perform an individualized analysis of the information requested in this case, our decision does not create a categorical constitutional protection and, therefore, it is not in conflict with our Supreme Court's opinion in *Nissen*.

The Foundation also notes that the statement in *Nissen* was recently adopted in *West v. Vermillion*, 196 Wn. App. 627, 384 P.3d 634 (2016), *cert. denied*, 2017 WL 2869953 (2017). However, nothing in *West* expands the holding in *Nissen* to the situation presented here. Like *Nissen*, *West* addressed the extent to which an agency employee is required to search their personal devices for public records. *West*, 196 Wn. App. at 635-36. *West* does not address whether there can be an expectation of privacy in information contained within public records. Rather, it recognizes the holding in *Nissen* that there is no categorical constitutional protection for public records that are contained on private devices. Accordingly, *West* does not support the Foundation's argument that there is a categorical prohibition against claiming a constitutionally protected expectation of privacy in information contained in public records.

Because we conclude that employees have a constitutionally protected expectation of privacy in their full names associated with their corresponding birthdates, we must next determine whether "authority of law . . . justifies the intrusion." The Foundation argues that the PRA is the authority of law which justifies intrusion into the employees' privacy.

No court has addressed when the PRA would *justify*, rather than allow, an intrusion into a constitutionally protected privacy interest. "Justify" means "to prove or show to be valid, sound, or conforming to fact or reason" and "to show to have had a sufficient legal reason." WEBSTER'S

THIRD NEW INTER-NATIONAL DICTIONARY 1228 (2002). Therefore, showing the intrusion is justified requires more than simply showing that the intrusion is permitted.

The PRA has a comprehensive stated purpose:

> The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created.

RCW 42.56.030. Public disclosure of state employees' full names associated with their corresponding birthdates does not inform the people of facts about an "instrument" they have created or provide information that allows the people to maintain control over those instruments. And public disclosure of this information would reveal discrete personal details of state employees not connected to their role as public servants. Thus, the purpose of the PRA is not served by the public disclosure of this information. Therefore, although the PRA may allow the disclosure of the information, the PRA does not justify the intrusion into the state employees' constitutionally protected expectation of privacy in their full names associated with their corresponding birthdates.

### III. OTHER REQUIREMENTS FOR AN INJUNCTION

Because we hold that the unions have met their burden to show that state employees have a constitutionally protected expectation of privacy in their full names associated with their corresponding birthdates, we also address whether the unions have also satisfied the two remaining requirements for a PRA permanent injunction. In addition to demonstrating that the information is exempt, the unions must also show that the disclosure would not be in the public interest and would substantially and irreparably harm that party or a vital government function. *Ameriquest*, 177 Wn.2d at 487. Moreover, as stated above, to obtain permanent injunctive relief, a party

generally must establish three elements: (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the act complained of will result in actual and substantial injury. *Huff*, 184 Wn.2d at 651.

Here, the unions meet the remaining PRA requirement because the public disclosure of birthdates of individually identified state employees is not in the public interest. The birthdates of individually identified state employees are not in the public interest because they do not inform the public of facts related to a government function. Moreover, the disclosure would substantially and irreparably harm the identified state employees. Public disclosure of state employees' personal information, which will make the information available to anyone, invades their constitutionally protected expectation of privacy, and exposes them to an ongoing risk of identity theft and other potential personal harms.

The unions have also met their burden to satisfy the three general requirements for a permanent injunction. The state employees have a clear and equitable right because they have a constitutionally protected expectation of privacy in their full names associated with their corresponding birthdays. And, the state employees have a well-grounded fear of immediate invasion of that right because the agencies who have received the PRA requests have indicated that they will disclose the requested records unless prevented by court order. And, as discussed above, public disclosure of this information will result in actual and substantial injury, will invade their constitutionally protected expectation of privacy, and will expose them to an ongoing risk of identity theft and other potential personal harms.

We hold that state employees have a constitutionally protected expectation of privacy in their full names associated with their corresponding birthdates. Because the employees have a constitutionally protected expectation of privacy, and the unions have satisfied the requirements for an order granting permanent PRA injunctions, the trial court erred by denying the unions' motions for permanent injunctions. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.